210 So.2d 283 (1968)
Alfred O. REIGER, Jr., and Other Abutting Land Owners On an Unnamed Canal Flowing into Kiss Lake, in Dade County, Florida, Not Named, but Made Parties As Members of a Class, Appellants,
v.
ANCHOR POST PRODUCTS, INC., a Florida Corporation et al., Appellees.
No. 67-478.
District Court of Appeal of Florida. Third District.
May 7, 1968.
Rehearing Denied May 29, 1968.
Quinton, Leib, Parks & Aurell, Miami, for appellants.
Manners & Amoon, Miami, for appellees.
Before CHARLES CARROLL, C.J., and HENDRY and SWANN, JJ.
HENDRY, Judge.
Appellees, defendants below, are owners of property abutting a man-made body of water known as Kiss Lake located in the Coral Park Estates Subdivision of Dade County. Acting collectively, appellees hired codefendant, Anchor Post Products, Inc., to erect a fence across the waterway entrance to the lake in an effort to restrict the use thereof to themselves as abutting owners. Appellants are owners of property abutting canals which are connected to the lake. They sought to prevent *284 construction of the fence by instituting suit below.
Prior to the final hearing, the parties entered into the following stipulation of facts:
"1. The named plaintiff, Alfred O. Reiger, Jr., resides at 1501 S.W. 99th Court, in Dade County, Florida.
"2. The residence of the named plaintiff, Alfred O. Reiger, Jr., abuts onto the unnamed canal which is the subject matter of the instant law suit which connects with a body of water known as Kiss Lake.
"3. A certain body of water commonly known as Kiss Lake, being thirty-six (36) acres, more or less, in size, and man-made in nature is located in Dade County, Florida and more specifically in Section Seven of Coral Park Estates, being a subdivision of a portion of the N.E. 1/4 of Section 8, Township 54 S., Range E., and a replat of a portion of Coral Park Estates Section Five (P.B. 68, P. 94).
"4. The canal upon which the property of the plaintiff Reiger, and the members of his class abuts opens into Kiss Lake at the extreme southwest corner of the afore-described lake, and at its entrance is approximately 100 feet, more or less, in width.
"5. The aforementioned canal is the sole means of ingress and egress by water into Kiss Lake.
"6. The aforementioned canal and lake as it exists now are man-made and were created as a part of the development of a residential area originally known as Coral Park Estates.
"7. The aforementioned canal is unnamed and connects with a body of water known as The Tamiami Canal which ultimately connects with a body of water commonly identified as Biscayne Bay, all of which being in Dade County, Florida.
"8. The aforementioned canal is navigable by boat in its entirety from its connection to Kiss Lake to its connection with the Tamiami Canal.
"9. The point at which the defendants seek to erect the fence in controversy, is approximately 100 feet wide and is located in the Southwest corner of Kiss Lake in the proximate vicinity of the entrance of the canal into the lake.
"10. The erection of the fence as contemplated by the Defendants would block egress and ingress by water into Kiss Lake.
"11. Since the completion of the aforementioned canal and Kiss Lake, owners of property abutting the lake and owners of property abutting the canal have used both the canal and lake for water sports, boating, fishing.
"12. That the land comprising the lake bottom of the said lake at the time the said lake and surrounding property was subdivided to create Coral Park Estates, Section Seven (7), was owned by Galloway, Inc., a Florida corporation, which has not transferred the fee simple ownership of said lake bottom to either of the parties herein, the State of Florida or the general public."
The officially recorded plat of Coral Park Estates, Section Seven, was introduced into evidence at the final hearing. Contained thereon is an accurate graphic representation of Kiss Lake, together with the following recital:
"That the lake as shown on the attached plat is hereby dedicated to the joint and several use of the lot owners of lots fronting on said lake. The owners of said lots shall have the right to bathe in waters of said lake and in a lawful and sportsmanlike manner to boat and fish on the waters thereof. The use and privilege herein granted shall be extended to the families of said owners, their heirs, successors or assigns, lessees or tenants and their other *285 guests, but does not extend to the use of said waters for any commercial purpose, or to derive profits therefrom or to any use which would create a nuisance and be ojectionable to the majority of the owners of property fronting on said lake, or which would affect the health of the community. No boathouse or other structure shall be erected on the shores of said lake or extend into the waters thereof unless the same be approved by the majority of the owners of the property fronting on said lake."
The record on appeal reflects that a majority of the owners of lake front property have approved construction of the contemplated fence.
The chancellor's findings are reflected in the final order:
"It is the finding of this Court that the written terminology as expressed in the plat of Coral Park Estates, Section 7, grants unto all the lake front owners on said lake * * * an exclusive affirmative easement to use the waters of said lake to the exclusion of the Plaintiffs herein and other members of the general public * * *"
Based upon these findings, the court below entered judgment in favor of the defendants and dissolved the temporary injunction previously issued. Plaintiffs prosecute the instant appeal.
The thrust of appellant's contention is that the language contained in the plat does not create an exclusive affirmative easement, but that it instead constitutes a common law dedication which must be to the use and benefit of the public. In support of their position, appellants cite the case of Burnham v. Davis Islands, Inc., Fla. 1956, 87 So.2d 97, which, they assert, stands for the proposition that there can be no dedication to a private use or to a use public in nature the enjoyment of which is restricted to a particular segment of the populace. We are of the opinion, however, that such a blanket assertion misplaces the emphasis of the rationale of the Burnham case. Quoting from the Burnham opinion at page 100:
"* * * It is true that the rights of abutting or adjacent purchasers have been considered as flowing from a `dedication', and certainly the filing of a plat may constitute an offer to both purchasers and the general public. But the cases indicate, where the distinction becomes material, that such purchasers' rights depend, not upon a true dedication, but upon a private easement implied from sales with reference to a plat showing streets, parks, or other areas subject to their use and enjoyment. [Citing cases] Such easements are vested or perfected in a grantee immediately upon conveyance to him, but it is clear that his rights are determined on the basis of principles of law applicable to private property interests as opposed to public dedications."
When the chancellor found that the rights of appellees in this case depend upon the existence of an exclusive affirmative easement, he correctly determined those rights according to principles of law applicable to private property interests. Thus, despite the phraseology contained in the language on the plat that the lake was "dedicated to" the abutting owners, we are not here concerned with a common law public dedication.
It is clear that an easement may be granted by the method of dedication and acceptance. Owen v. Yount, Fla.App. 1967, 198 So.2d 360. It is equally clear from the language of the grant that such easement is exclusively the interest of appellees as owners of property abutting the lake. And finally, it is settled that an easement carries with it, by implication, the right to do what is reasonably necessary for the full enjoyment of the interest granted, so long as the burden upon the servient estate is not injuriously increased. Crutchfield v. F.A. Sebring Realty Co., Fla. 1954, 69 So.2d 328.
*286 On the basis of the foregoing, we conclude that the decision reached by the chancellor was correct, and therefore the order appealed must be affirmed.
Affirmed.