548 So.2d 691 (1989)
Edward W. EASTON, As Trustee, Appellant,
v.
David A. APPLER and Margaret V. Appler, His Wife, et al., Appellees.
No. 87-2995.
District Court of Appeal of Florida, Third District.
July 11, 1989.
*693 Rosenberg Reisman & Stein; Klein & Beranek and John Beranek and Steve Saks, West Palm Beach, for appellant.
Hornsby & Whisenand and Ronald P. Weil and Harvey A. Abrams, for appellees.
Before HUBBART and FERGUSON, JJ., and BARFIELD, EDWARD, Associate Judge.
FERGUSON, Judge.
The appellees, thirty-six homeowners in the King's Bay Subdivision, brought an action against Edward Easton, as trustee for the King's Bay Yacht and Country Club, for declaratory and injunctive relief alleging that "[t]here exists a bona fide, actual and present controversy concerning the use of the turning basin and dock facilities" operated by the club. In their prayer for relief the plaintiffs sought the exclusive right to use the turning basin and dock slips, an easement across an adjacent parking lot, unrestricted ownership of dock facilities, imposition of a constructive trust on rental proceeds received by Easton, an order prohibiting removal of vessels, and damages and costs. The club filed a counterclaim to quiet title to the property and sought to have the suit certified as a class action. It also asserted that many of the lot owners had waived any interest they had in the marina.
This is an appeal from a final judgment which, among other things, orders the destruction of the marina at King's Bay Yacht and Country Club and grants permission to homeowners in the King's Bay Subdivision to construct their own marina on the yacht and country club's property. We are as "mystified" as the appellant at the breadth of the judgment.[1]
The King's Bay Subdivision was built in the mid 1950's as a yacht and country club, marina, and single-family residence development. The eastern section of the subdivision, tract A, was retained by the developer for the construction of the King's Bay Yacht and Country Club. Most of the remaining land was divided into residential lots and sold to individual purchasers. An artificial waterway  an eight-acre turning basin  was dredged by the developer to provide access to Biscayne Bay. It is undisputed that the basin bottom, and the canal which links it to the bay, are owned by the country club. On the country club property a marina was constructed for the use of country club members and lot owners. As an inducement to prospective lot purchasers, the developer filed a restrictive covenant in 1955 promising to build and maintain the marina and granting each homeowner in the subdivision the right to use a boat slip in the marina for thirty years at a minimal fee of $2.50 per month.
The marina presently consists of docks, 150 boat slips, storage areas, a boat hoist, gasoline pumps, and ancillary marine facilities. When the thirty-year covenant to provide and maintain dockage expired in 1985, only seven of the one hundred fifty lot owners in King's Bay Subdivision had boats in the yacht and country club's marina. Those boat owners were advised that they could continue to maintain their boats in the marina if they joined the club at one-half the normal initiation fee, paid annual dues, and remitted the customary boat-slip rental fee. Declining the offer, the boat owners joined with thirty other lot owners and filed the petition for declaratory and injunctive relief.
After a nonjury trial, the court, in addition to ordering removal of the marina, granted the lot owners a perpetual exclusive easement to use the turning basin and an easement of necessity across the club's parking lot to reach the artificial lake. Furthermore, the court found that the waivers and disclaimers had no legal effect and that the plaintiffs were entitled to damages. Subsequent to the ruling, owners of the country club filed a motion to disqualify the judge. The motion was denied.

EXCLUSIVE EASEMENT TO THE TURNING BASIN
In support of their claim to a perpetual, exclusive easement to the turning *694 basin, to the exclusion of the country club, the homeowners rely on the King's Bay Subdivision Plat which was filed in Dade County in 1955. The plat dedicated[2] the turning basin "to the use and enjoyment of the property owners of King's Bay Subdivision." The homeowners contend, correctly, that by virtue of the plat, they are entitled to an easement to use the turning basin. It is settled law that when property is purchased and the deed of conveyance refers to a plat on which streets, parks, or other open areas are shown, the buyers acquire an implied private easement with respect to the areas designated on the plat. Florida E. Coast Ry. Co. v. Worley, 49 Fla. 297, 38 So. 618 (Fla. 1905); City of Miami v. Eastern Realty Co., 202 So.2d 760 (Fla. 3d DCA 1967), cert. denied, 210 So.2d 866 (Fla. 1968); Cartish v. Soper, 157 So.2d 150 (Fla. 3d DCA 1963); Weber v. City of Hollywood, 120 So.2d 826 (Fla. 2d DCA 1960). This rule of law, applicable to man-made water bodies as well as land, Reiger v. Anchor Post Prods., Inc., 210 So.2d 283 (Fla. 3d DCA 1968) (private easement for the use of man-made lake implied where the plat recites that the lake is dedicated to the use of lot owners), is based on the principle of estoppel; prospective purchasers induced to purchase lots in reliance on the grantor's representations, regarding open areas referenced to in the plat, may bind the grantor to his representations. Boothby v. Gulf Properties, 40 So.2d 117 (Fla. 1948); Leffler v. Smith, 388 So.2d 261 (Fla. 5th DCA 1980), rev. denied, 397 So.2d 778 (Fla. 1981). Nevertheless, the homeowners' easement to use and enjoy the turning basin is not exclusive and does not entitle them to bar the country club from a use which is consistent with the purpose of the grant.
An easement, generally, is a right in the owner of one parcel of land, by reason of such ownership, to unfettered use of the property of another for a special purpose, see Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926), not inconsistent with the general property rights of the owner. Florida Power Corp. v. McNeely, 125 So.2d 311 (Fla. 2d DCA 1960), cert. denied, 138 So.2d 341 (Fla. 1961). The extent of an easement implied by a plat depends on the intent of the parties. 28 C.J.S. Easements § 39 (1941). Intent is determined by the language of the granting instrument, the situation of the property, and the surrounding circumstances. 2 G. Thompson, On Real Property § 425 at 647 (1980 Repl.). In this case the grantor was also the owner of the bordering yacht and country club. We think it implausible that the grantor/developer excavated a lake adjacent to the yacht and country club which he owned, along with a canal linking the lake to the bay, intending that he would be precluded from using the lake for any purpose. Generally, an easement is not intended to be exclusive unless the grant so provides. Id. at 656. There is no language in the plat suggesting that the use of the turning basin would be restricted to the lot owners. Although appellees are correct in asserting that the owner of the fee ordinarily does not have an easement in his own land, 1A R. Boyer, Florida Real Estate Transactions § 23.0(1) (1988), the language of the plat, dedicating the basin to the use of the King's Bay Subdivision property owners, reflects the grantor's intent as a property owner in the subdivision, not to limit the benefit of the waterway to the lot owners. Furthermore, assuming that the plat is ambiguous as to the scope of the easement granted, the trial court was obligated to give the creating document a construction favoring non-exclusivity. Wiggins v. Lykes Bros., 97 So.2d 273, 276 (Fla. 1957) (if doubt exists over scope of easement granted, court will conclude that grantor may also use land subject to easement so long as he does not interfere with grantee's use); Stephens v. Dobbins, 511 So.2d 652 (Fla. 2d DCA 1987) (same); Gelfand *695 v. Mortgage Investors, 453 So.2d 897 (Fla. 4th DCA 1984) (same).[3]
The appellees base their claim to an exclusive easement on two Florida cases, McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1953) and Reiger v. Anchor Post Prod., Inc., 210 So.2d 283 (Fla. 3d DCA 1968). Those cases do not mandate the result reached by the trial court in this case. In McCorquodale the developers had, by plat, granted the use of certain land to property owners in the subdivision for use as a park. It was held there that the developer could not construct a building on the land which interfered with use of the land for a public park. This case differs in two material respects: (1) The use made of the basin is not inconsistent with the platted use; and (2) when the property was platted, the developer was a substantial property owner in the King's Bay Subdivision. Similarly, Reiger involved an attempted use of a waterway by persons other than the owners of waterfront lots who were specifically identified as beneficiaries of an easement. Here, it is uncontested that when the plat was filed in 1955, the yacht and country club was a King's Bay Subdivision property owner.[4]

HOMEOWNERS' UNRESTRICTED OWNERSHIP OF DOCKS
The homeowners' prayer for relief sought "the unrestricted ownership ... of all dock facilities constructed in the King's Bay Turning Basin." That prayer stands on even weaker factual grounds than the claim to a perpetual exclusive easement to the turning basin.
First, any rights the plaintiffs had to the docks were granted to them by the restrictive covenant which gave the lot owners only the right to rent a well-maintained boat slip. The covenant did not convey title to the marina. Second, the contractual rights and obligations created by the covenant, see Board of Public Instruction v. Town of Bay Harbor Islands, 81 So.2d 637, 640 (Fla. 1955), were for the limited period of thirty years.
The trial court, however, found that the marina was interfering with the homeowners' exclusive easement to use the turning basin, and therefore ordered its destruction.[5] Because the destruction was based on an erroneous legal conclusion  that the plat granted the homeowners an exclusive easement to use the turning basin  the drastic remedy must be vacated.
Furthermore, the burden created by an easement may not be increased beyond that reasonably contemplated by the parties at the time of its creation. Groff v. Moses, 344 So.2d 951 (Fla. 2d DCA 1977). In this case the homeowners could reasonably have expected only that the turning basin would be forever open to them, and that dockage would be provided at a nominal fee for thirty years. The grantor expected the rights he conveyed to the homeowners *696 to co-exist with his right to use the basin. Nothing more was ever contemplated by either party. It was not within the parties' reasonable expectations that after the thirty-year period expired, the marina would be destroyed so as not to interfere with the homeowners' enjoyment of the basin. Moreover, an easement  as was created by the plat  does not convey title to land and works no dispossession of the owner. 28 C.J.S. Easements § 73 at 751 (1941).
Because the club did not interfere with the homeowners' nonexclusive easement to use the lake, see Florida Audubon Soc'y v. Ratner, 497 So.2d 672, 676 (Fla. 3d DCA 1986), rev. denied, 508 So.2d 15 (Fla. 1987) (the fee owner is entitled to those rights which do not conflict with the purpose of the easement), there is no basis for the damages award. See generally 25 Am.Jur.2d Easements and Licenses § 123 (1966) (damages for obstruction of easement are measured by injury sustained by plaintiff).
Having concluded that any rights the homeowners had in the marina derived from the restrictive covenant which expired in 1985, we need not reach the issue whether any of the homeowners waived those rights by subsequent agreements entered into with the developer's successors-in-interest.

EASEMENT OF NECESSITY ACROSS PARKING LOT
The trial court ruled that the homeowners were entitled to an implied easement of necessity across the club's parking lot for ingress and egress to the turning basin, obviously accepting the contention that the yacht club site is the only parcel of land available for access to the basin. Nevertheless, the club makes an argument, which the record supports, that there is other land along Southwest 62nd Avenue, a public road in the subdivision bordering the basin, providing access to the waterway. Allegedly, the opening to the basin from the public highway is 125 feet in width. Granting an easement of necessity where there is an alternative point of access is error. Matthews v. Quarles, 504 So.2d 1246 (Fla. 1st DCA 1986) (easement by necessity cannot be implied where there is other reasonable access to the property); § 704.01, Fla. Stat. (1987). Because the record is incomplete concerning the existence of an alternative practicable route of access to the water body, another evidentiary hearing, complete with factual findings, is necessary. See Parham v. Reddick, 537 So.2d 132 (Fla. 1st DCA 1988) (to establish right to statutory way of necessity, claimant has burden of showing that there is no practicable route of ingress and egress); Faison v. Smith, 510 So.2d 928 (Fla. 5th DCA 1987) (same). Assuming that the homeowners may prove an easement by necessity, that right would be nonexclusive and may be narrowly circumscribed.
We find no merit in the appellant's final contentions regarding class certification and refusal of the court to disqualify itself. In light of the reversal on the significant issues, the cost judgment is also reversed.
We reverse the findings that the homeowners have an exclusive easement to the turning basin and that the country club's use interferes with the homeowners' use of the basin, reverse the damages award, affirm the denial of class certification and the motion to disqualify, and remand for an evidentiary hearing on whether the homeowners are entitled to an easement of necessity across the club's parking lot to access the turning basin.
NOTES
[1] The specific relief granted was not sought by the pleadings. In fact, counsel for the appellees stated on the record "we don't want the court to take that drastic remedy...." In clarifying the relief sought, appellees asked the court simply to give "full force and effect" to the "initial developer's intent" that the homeowners have unfettered use of the marina facilities.
[2] Although the parties use the term dedication, the lot purchasers' rights arise not by true dedication, which is an appropriation of land for use by the general public, made by the owner, and accepted by the municipality, Earle v. McCarty, 70 So.2d 314 (Fla. 1954); instead, the purchasers' rights are based on principles of law applicable to private property. Burnham v. Davis Islands, Inc., 87 So.2d 97, 100 (Fla. 1956); Reiger v. Anchor Post Prods., Inc., 210 So.2d 283 (Fla. 3d DCA 1968).
[3] Because we are holding that the developer never granted the lot owners an exclusive easement to use the turning basin, we need not reach the question of the country club's water rights which are incident to ownership of land abutting the waterway.
[4] Although a 1980 replat of the area took the yacht and country club out of the subdivision, the country club's status as a property owner with irrevocable rights to use the basin was not affected. See 2 G. Thompson, 2 On Real Property § 371 at 466 (1980 Repl.).
[5] After finding that the "Dedication in King's Bay Subdivision Plat created a perpetual exclusive affirmative easement which runs with the [homeowners'] lots," the trial court found further, that the club's "operation of the docks, slips and marina so as to deprive [the homeowners'] of their use, constitutes a use of the turning basin ... in a commercial manner and for commercial purposes contrary to [the zoning law]." First, it is not the club's use of the marina and the basin which deprives the homeowners of use of the marina for a nominal fee, but rather the expiration of the covenant. The latter finding  that the commercial use violates zoning laws  could not be, independently, a basis for the relief granted the homeowners. Second, that the membership club charges fees for the maintenance and operation of the facility does not make it a commercial use under zoning laws. The test is whether the purpose is primarily for profit. A membership corporation is one organized for purposes other than that of pecuniary gain. See In re Elmsford Country Club, 50 F.2d 238 (D.C.N.Y. 1931); In re William McKinley Lodge No. 840, 4 F. Supp. 280 (S.D.N.Y. 1933). There is no evidence in the record that the membership club, a non-profit corporation, has a purpose other than providing recreation for its members.