WELLS, J.
A certified class consisting of homeowners and their homeowner association (collectively Kings Bay) appeals, and the owner/operator of a neighboring marina (Deering Bay) cross-appeals, from a judgment resolving Kings Bay’s claims that Deering Bay violated a number of terms of multiple agreements between the parties. For the reasons explained below, we affirm the trial court’s rulings on each of these claims save the ruling authorizing Deering Bay to impose a $3 per linear foot per night fee for use of its temporary dock facility.
In 1989, the parties (or their predecessors) executed an agreement — the “Ap-pier” agreement — settling years of litigation regarding Kings Bay’s right to use a neighborhood turning basin and marina. This litigation stemmed from two documents: (1) an earlier recorded plat of 150 lots in the Kings Bay subdivision, a turning basin, and a tract of land abutting the turning basin which was retained by Kings Bay’s developer, and (2) an earlier recorded restrictive covenant which provided Kings Bay with certain rights to use boat slips at a yacht club to be built on the abutting land.
In the original action, which commenced after the restrictive covenant expired in 1985, a number of Kings Bay homeowners sought the exclusive right to use the turning basin and dock slips at the marina which then abutted the turning basin. They also sought an easement across the tract of land on which the marina was located. In that proceeding, this Court ruled that the homeowners did not enjoy exclusive rights to the turning basin or to the dock slips. See Easton v. Appler, 548 So.2d 691 (Fla. 3d DCA 1989).
We did, however, remand for an evidentiary hearing to determine whether the homeowners were entitled to an easement. Id. Following remand, the parties executed the Appier agreement in which Kings Bay relinquished its easement claim and agreed to cooperate in zoning proceedings related to construction of a new marina in ex *1164 change for the right to purchase a specified number of dock slips in the new marina, compensation, and use of a number of additional dock slips for a period of five years. The agreement also provided Kings Bay with access to the marina and its boat ramp, the right to use the boat ramp, and the right to dock their boats at a facility to be established by the marina:
Plaintiff Homeowners and Non-Plaintiff Homeowners and all other Lot Owners shall have the right to use the boat ramp in common with equity members, subject to rules and regulations promulgated by Trustee or the organization charged with the administration and management of the Marina. Appropriate and reasonable access shall be provided to the boat ramp for all parties entitled to use it. Parties entitled to utilize the boat ramp shall be permitted, in accordance with the rules and regulations of the Marina, to dock their boats for temporary periods of time at a facility to be established for the purpose of mooring small boats. However, no boat may be so docked for more than two (2) nights in succession. No more than eight (8) boats owned by Plaintiff Homeowners, Non-Plaintiff Homeowners or other Lot Owners eligible to use the boat ramp shall be permitted to be docked at such facility at the same time.
[[Image here]]
Trustee shall provide reasonable and practicable access to the Marina for all parties entitled to use the Marina facilities .... The access which shall be provided in accordance with this Article may be relocated from time to time as Trustee shall determine, provided that it shall remain reasonable and practicable for the use of the marina facilities.
Appier Agreement §§ 7,19.
Following execution of this agreement, Kings Bay homeowners were afforded access to the marina and the boat ramp twenty four hours a day, seven days a week (24/7). In 1996, a new marina was constructed, and although a security gate was installed at the marina access point for the Kings Bay homeowners, they were still accorded twenty four hour a day, seven day a week (24/7) access to the marina and boat ramp. During that same year, the original development plan for the tract of land on which the marina was located was revised requiring additional governmental approvals for the proposed increase in size and density of the development. Some Kings Bay homeowners opposed these plans.
As a consequence, Deering Bay’s predecessor and Kings Bay executed an additional agreement, the “Pedestrian Access Agreement,” in which Deering Bay agreed to provide additional access to Kings Bay homeowners to the marina and waterfront in exchange for Kings Bay’s agreement to drop its opposition to the developer’s expanded plans. This agreement, like the one before it, provided for access:
Deering hereby grants to the Homeowners a license for pedestrian access into the portion of the marina component of the Development as shown on Exhibit “D” to this agreement. This license is granted to the Homeowners for the sole purpose of providing means of access to and enjoyment of the waterfront and is not intended in any manner to grant the Homeowners any interest or membership in and to the marina or any other portion or component of the Development. The license is further restricted and limited to access strictly within the boundaries identified on Exhibit “D” and any person who exceeds the limits of the license granted herein or reasonable rules and regulations imposed from time to time by Deering shall forfeit all rights granted herein. *1165 This license is personal to the Homeowners and their resident family members and not assignable.
Pedestrian Access Agreement ¶ 1.3.
Following execution of this agreement, Kings Bay homeowners were afforded pedestrian access to the marina and waterfront twenty four hours a day, seven days a week (24/7). Thereafter, Deering Bay instituted a number of rules and regulations which, among other things: (a) limited Kings Bay homeowners’ pedestrian and boat ramp access; (b) imposed a $500 annual fee for use of the boat ramp; (c) imposed a $3 per linear foot fee per night for use of the temporary dock; and (d) mandated one week’s advance notice to exercise temporary dockage rights. Asserting their rights under the Appier and Pedestrian Access agreements, Kings Bay sought declaratory and injunctive relief.
On October 27, 2006, the court below entered a partial summary judgment declaring the $500 annual fee to use the boat ramp and the one week’s advance notice to use the temporary dock invalid. Following a five day bench trial, the trial court, in pertinent part, declared that:
(a) Kings Bay homeowners could be required to pay a $3 per linear foot fee per night to use dock space at the marina;
(b) Kings Bay homeowner access to the boat ramp could be reasonably restricted by Deering Bay and that access from 7:00 a.m. until 7:00 p.m. year round except Christmas Day, Thanksgiving Day and during natural emergencies was reasonable;
(c) Kings Bay pedestrian access could be reasonably restricted by Deering Bay pursuant to the Pedestrian Access Agreement and that access from 7:00 a.m. until 12:00 a.m. year round was reasonable; and
(d) Kings Bay access to the marina facilities for use of the boat ramp and pedestrian access could be reasonably restricted and that making access available within ten (10) minutes of a telephone request, with a five (5) minute grace period was reasonable.
Kings Bay argues here that the trial court erred by upholding the $3 per linear foot fee for the overnight dockage; by according Kings Bay “less access” to the boat ramp than that accorded to Deering Bay members; and by not allowing Kings Bay twenty four hour a day, seven days per week (24/7) pedestrian access to the marina. Deering Bay argues that the trial court erred by invalidating the $500 annual fee to use the boat ramp and by declaring that there was no restriction on the size boat which Kings Bay homeowners could temporarily dock.
With the exception of the $3 per linear foot fee, we affirm the judgment entered below. Both the Appier and the Pedestrian Access Agreements expressly permit imposition of reasonable restrictions on both marina and pedestrian access. Because the trial court’s rulings regarding the reasonableness of the restrictions imposed as to both are supported by competent, substantial evidence, we find no error in the trial court’s rulings as to marina and pedestrian access. See Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180, 182 (Fla. 4th DCA 1975) (“[W]e believe the test is reasonableness. If a rule is reasonable the association can adopt it; if not, it cannot.... [E]ach case must be considered upon the peculiar facts and circumstances thereto appertaining.”).
We also find no error in the trial court’s ruling invalidating the $500 annual fee for using the boat ramp and determining that there is no size restriction on vessels that Kings Bay homeowners may dock at the temporary dock. While the Appier agreement contains numerous pro *1166 visions governing both the purchase, maintenance, and use of boat slips by Kings Bay homeowners and the costs associated with each,[1] it makes no provision whatsoever for imposition of any fees or costs associated with use of the boat ramp. This agreement also imposes no limitation on the size vessel that these homeowners may dock at the temporary dock. As this and many other courts have stated, courts do not rewrite contracts. See, e.g., Fernandez v. Homestar at Miller Cove, Inc., 935 So.2d 547, 551 (Fla. 3d DCA 2006) (observing “a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties” (quoting Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1003 (Fla. 2d DCA 1995))); see also Beach Resort Hotel Corp. v. Wieder, 79 So.2d 659, 663 (Fla.1955) (“It is well settled that courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.”). The trial court was therefore correct in invalidating the $500 annual boat ramp fee and in concluding that Kings Bay homeowners could dock vessels of any size at the temporary dock.
We do, however, find that the trial court erred in concluding that Deering Bay could impose a $3 per linear foot per night fee on Kings Bay homeowners for using the temporary dock. As with the $500 annual fee to use the boat ramp, the Appier agreement confers no authority on Deering Bay to impose a fee for using the temporary dock — a fact conceded by Deering Bay in its written closing argument below. The contracts at issue here are clear and unambiguous and require no interpretation. See Pol v. Pol, 705 So.2d 51, 53 (Fla. 3d DCA 1997) (“It is well established that court cannot rewrite the clear and unambiguous terms of a voluntary contract.”); see also Wood/Fay Realty Group, Inc. v. New Aquarius Corp., 842 So.2d 914, 917 (Fla. 3d DCA 2003) (concluding that clear and unambiguous contractual terms require no interpretation or rewriting). The Kings Bay homeowners gave up valuable rights and agreed to cooperate with Deering Bay (or its predecessors) to develop this property. In exchange, they received reasonable access to a portion of the Deering Bay property, reasonable access to the marina, the right to use the boat ramp and temporary boat dock subject to reasonable rules, and the right to purchase and use boat slips at a cost detailed in their agreement. They did not, however, agree to pay any fees or costs for use of the boat ramp and temporary dock, nor did they agree to limit the size vessel that they could dock at these facilities. We therefore vacate that portion of the judgment authorizing imposition of a $3 per linear foot per night fee for use of the temporary dock and in all other *1167 respects affirm both the appeal and cross-appeal.
Affirmed in part, reversed in part.

. These provisions include:
"PLAINTIFF HOMEOWNERS RIGHTS TO PURCHASE SLIPS,” section 5; "Grant and Purchase Pnce," section 5.1; "Payment to PLAINTIFF HOMEOWNER in lieu of Slip Purchase,” section 5.2; "Time for Exercise of Option,” section 5.3 (instructing homeowners to give notice of election and time for $15,000 or $20,000 payment depending on option selected); "Time for Payment,” section 5.4; “Slip Lease or Use Agreement,"
section 6.4 (providing that costs and fees were to be charged "as provided in Section 6.6 of this Article”); "Costs for Non-Plaintiff Homeowner Slip Users,” section 6.6, "Payment of Use fees,” section 6.9; "NON-PLAINTIFF HOMEOWNERS RIGHT OF PURCHASE OF BOAT SLIPS AFTER EXPIRATION OF USAGE RIGHTS,” section 13; "Marina Access,” section 19, (confirming "the same costs and charges as shall be made to Equity Members”).