WHITE, JOSEPH S., Associate Judge.
This appeal brings for review a final decree for specific performance of a written contract for the sale of real estate rendered upon the complaint of the purchaser against the vendors, who were husband and wife. The latter have appealed.
The dispute came about in this fashion: The purchaser signed a contract for the purchase of the property in question and caused the agent who had proposed the sale to the purchaser to take the contract to the vendors for acceptance. The proposed contract contained a clause that it was “subject to owner painting exterior of house at his cost.” It likewise contained this proposition :
“If this contract is not executed by the seller and buyer on or before Nov. 6th, 1964, the aforesaid deposit shall be, at the option of the buyer, returned to him and this agreement shall be null and void. The date of contract, for purposes of performance, shall be regarded as the date when the last one of the Seller and Buyer has signed this contract.”
November 6th fell on Friday. The contract was delivered to the vendors by the agent during the afternoon of that day. The vendors executed it but struck the *5 clause requiring them to paint the house. This was accomplished by running a pen through the clause and initialing the change on the margin. The contract as thus changed was returned to the purchaser that same afternoon with the understanding that the purchaser would show his assent to the change by likewise initialing it. At this stage the transaction took the form of a counteroffer by the vendors. The purchaser accepted the change and initialed the margin as suggested, but not until the next day, Saturday, November 7th. The vendors were not advised of the acceptance until Sunday, November 8th. On that day the agent took the contract to the vendors’ home. The husband was not there and the wife informed the agent “that they were not going through with the deal. * * * ” However, we fin'd evidence in the record that on the following day, Monday, November 9th, the parties recognized the contract as binding and proceeded as if to ignore the possibility that there was any infirmity in it.
First, there is evidence that on Monday the agent, in attempting to return a telephone call from the husband received at the agent’s office during the latter’s absence, reached the wife at her home and informed the wife that she, the agent, had “a call here from Mr. Smart”, (the husband), to which the wife replied: “Well, of course, I know what he wants with you. * * * He wants to tell you to go ahead with the deal.”
Next, there is evidence that later, on that day, there was a meeting between the purchaser and the husband in the agent’s office at which time “there was considerable conversation as to proceeding with the sale.” There was discussion about securing a loan and about a shortage of time in closing the sale, and about “draperies in the family room, which were not part of the contract. It was just sort of an agreement that he was going to leave them.” Later it was arranged without indication of protest that appraisers from the loan company inspect the house. A survey and abstract of title was discussed with the husband. The agent was requested by the vendors to find another place which could be rented and where the vendors could live after giving up the property in question. From that point on the usual details involved in such transactions moved along without hitch until November 17th, when the husband told the purchaser that “he could not go through with this deal. * * * ”
The position taken now by the appellants (vendors) is that their counter-offer was not accepted until after November 6th, as required by the contract, and that therefore the contract was not binding. In reply appellee cites Foltz v. Evans, 1943, 113 Ind. App. 596, 49 N.E.2d 358. In dealing with a contract and circumstances somewhat similar to those presented here the court in that case said:
“ * * * We do not however believe that the requirements of the original offerer as to time or manner of acceptance should be carried forward and become a part of the counter-offer unless the intention that such should be the case is clearly expressed in or necessarily implied from the terms of the instrument itself. * * * ”
It is a well-established rule that the true meaning of doubtful and uncertain provisions in contracts is to be arrived at by ascertaining the intention of the parties. “Intention”, as the term is used in connection with contracting parties, is an operation of the mind, which, when not clearly expressed, may be demonstrated by conduct. Here, there is evidence which the trial judge might well have accepted as being true which dispels any idea that when they returned the contract for the purchaser’s acceptance of their counter-offer the vendors then intended that the contract would be invalid unless so accepted on that date. After learning of the purchaser’s acceptance the vendors voiced no complaint on that account, but by their conduct indicated that they considered the contract binding.
In this connection it is worth noting that the provision of the contract in question was inserted for the benefit of the purchaser. *6 His wife was departing November 7th on a voyage to another state and the purchaser wanted the matter settled before her departure. Furthermore, the provision shows on its face that it was for the purchaser’s benefit. It was enforceable upon the purchaser’s option.
The conclusion by the lower court that the vendors did not intend, when making their counter-offer, that it be accepted precisely on the date mentioned in the contract is supported by substantial evidence.
Affirmed.
WALDEN, C. J., and CROSS, L, concur