368 So.2d 114 (1979)
JONITA, INC., Appellant,
v.
Cecil O. LEWIS et al., Appellees.
No. II-117.
District Court of Appeal of Florida, First District.
March 8, 1979.
*115 J. Klein Wigginton and William C. Owen of McClure, Wigginton & Owen, Tallahassee, for appellant.
D. Michael Chesser of Selby & Chesser, Fort Walton Beach, for appellees.
MILLS, Judge.
Lewis and Gillespie brought suit for declaratory judgment and affirmative relief against Jonita.
In Count One, Lewis alleged that he and his wife purchased a golf course lot in Lake Lorraine Estates from Jonita and, as a result of purchasing this lot, acquired by implication the unrestricted view and potential access to the undeveloped area surrounding the golf course. Lewis contended he was entitled to injunctive relief due to Jonita's construction of a fence along its golf course property line to the rear of the Lewises' lot.
In Count II, Lewis and Gillespie sought to have their rights determined with respect to a segment of roadway, known as Entrance Road, which had been closed by Jonita. They asserted that they obtained an easement by implication and that Jonita was estopped from denying them ingress and egress over the closed section of Entrance Road. They sought injunctive relief to require Jonita to open and make passable the section of Entrance Road which was closed. Jonita alleged that the disputed road section had been eroded and washed out by action of the Choctawhatchee Bay and that it was necessary to eliminate access to the road to protect the public from damages and to protect Jonita from liability.
At the conclusion of the trial, Lewis and Gillespie moved to conform all pleadings to the evidence presented. The motion was granted. The trial court entered final judgment granting an easement over the closed section of Entrance Road in favor of Lewis, Gillespie and other subdivision property owners and limiting the height and type of fence which Jonita could construct along the golf course property.
Jonita appealed.
The issues raised by this appeal are as follows:
1. Where subdivision purchasers acquire their property by deeds referring to a recorded plat and thereafter are afforded access to the property by dedicated public roadway as shown on the plat, do the purchasers acquire permanent easement rights over a segment of roadway not shown on the plat by virtue of reliance upon the developers general layout maps and material reflecting the existence of the roadway?
2. Whether the restrictions on the fence ordered and imposed by the trial court were justified?
Jonita is a family corporation with John W. Boyce as President. Jonita is the owner and principal developer of a residential development located east of the community of Shalimar called Lake Lorraine Estates. Jonita *116 also owns the stock of a corporation known as Lake Lorraine Golf and Tennis Club, Inc. (the Club). The Club leases golf course property and grounds from Jonita.

The Road
On 21 November 1967, the plat to Lake Lorraine Estates, the original subdivision, was recorded in the public records. However, Lewis and Gillespie testified that they were given copies of a map when they visited Jonita's office and indicated an interest in the property. A large copy of the map was located on a wall behind the secretary in Boyce's office, the office from which all sales were made. The plat and the map indicate different entrances to the subdivision. The plat indicated the entrance to be by Country Club Road. The map indicated the entrance to be by Entrance Road.
Gillespie testified that at the time he purchased his property and later at the time he finished and moved into his house in November 1968, there was no practical access to his property by regular passenger vehicle other than the bay approach by Entrance Road. Lewis testified that at the time he moved into his house in December 1971, the only paved access to his property was over Entrance Road, the route by the bay.
Both witnesses testified that Country Club Road, at the north of the development, was later extended to the west and then south to the point where it connected with Entrance Road leading from Fourth Avenue. Gillespie testified that his first knowledge of any map showing plans for the extension of Country Club Road west and south was a newspaper ad appearing in October 1968.
Boyce testified that Entrance Road came about as a means of access to the country club, that he originally planned to build a commercial lodge in the area of the disputed road segment, and that the road was not constructed as a permanent road. Boyce also testified that the disputed road section was closed in June 1973 due to extreme erosion.
The segment of Entrance Road in question, the part traversing the area between the clubhouse and Choctawhatchee Bay, was not reflected on the recorded plat to Lake Lorraine Estates. Lewis and Gillespie contend that they purchased their lots relying upon the location of Entrance Road as shown on the map, therefore, they are entitled to an easement to this roadway.
Assuming the trial court found that Lewis and Gillespie relied upon the map as an inducement to purchase their properties, a lawful and proper basis for implying an easement has not been demonstrated. An easement can be created in only three ways: by express grant, by implication, or by prescription. The theory of this case is that certain easement rights arose by implication.
In McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1953), our Supreme Court upheld the right of subdivision property owners to enjoin the obstruction of an area labeled "Sunnyside Park" on a recorded plat. The question in the case at bar is whether the McCorquodale rule can be extended to create private easement rights based upon pictorial representations appearing in the developer's advertising material and general layout maps but not referenced in the conveying instrument itself or in a recorded plat referred to in the conveying instrument.
In Owen v. Yount, 198 So.2d 360 (Fla. et sec. DCA 1967), the Court stated that an easement can be impressed only by specific written grant or reservation, by dedication and acceptance or by prescription, and cannot be impressed solely by conversation or by advertising and selling. In Brooks-Garrison Hotel Corp. v. Sarah Investment Company, 61 So.2d 913 (Fla. 1953), the Court held that an implied easement did not result from an unfiled and unrecorded plat which reflected that a strip of land was dedicated to the public for a street. Thus, the traditional theory of an implied easement is not available to sustain the conclusion of the trial court.
*117 Further, the appellees did not acquire an easement of necessity. A common law or statutory "way of necessity" may have existed in the developmental stages of the subdivision to afford access to subdivision purchasers along the bay, however, this right terminated upon completion of the Country Club Road extension which provided public road access to the lots in question. This is the underlying rationale suggested in Hanna v. Means, 319 So.2d 61 (Fla. 2d DCA 1975).

The Fence
Boyce testified that he determined to fence in portions of the golf course to combat vandalism and various other activities occurring on the golf course. He relayed his intention to construct a fence around the golf course over those portions where the property owners did not elect to place their own fences. Gillespie did not want a fence along his back property line but reluctantly put in his own fence rather than undergo the alternative of having the club place its fence along the property line. Lewis rejected the club's alternative to put up his own fence at his own expense, and the club erected a five-foot chain link fence topped by one foot of barbed wire. After the six-foot fence was erected, other surrounding property owners began to construct their own four-foot fences. Lewis testified that he asked Boyce at the time of the purchase of his lot whether Boyce expected any fences to be constructed on the property line and Boyce indicated that he did not.
Boyce was asked by the Court whether a four-foot fence had proved adequate in areas where residences were and Boyce answered "Yes". Gillespie and Lewis testified that no significant vandalism occurred at the golf course. Vast areas of the subdivision remained unimproved and completely accessible to people desiring to enter onto the golf course. Under these circumstances, the Court properly ordered Jonita to limit the height of its fences to four feet and the construction to chain link.
The final judgment appealed is reversed in part and affirmed in part.
McCORD, C.J., and BOOTH, J., concur.