373 So.2d 60 (1979)
Dorothy P. WELCH et al., Appellants,
v.
POINT OF AMERICAS CONDOMINIUM APARTMENTS, INC., et al., Appellees.
Nos. 76-2306, 77-1116 and 77-1159.
District Court of Appeal of Florida, Fourth District.
June 29, 1979.
Rehearing Denied August 8, 1979.
*61 Davis W. Duke, Jr., of McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for appellant-Dorothy P. Welch.
William E. Ashcraft of Birr & Ashcraft, Fort Lauderdale, for appellant-Cedar Lane Developers, Inc.
Kenneth R. Mikos of Friedrich, Kersten, Blackwell & Mikos, Fort Lauderdale, for appellees.
DOWNEY, Chief Judge.
We have for review an appeal from an interlocutory order entered September 27, 1976, and two separate appeals from the final judgment rendered April 26, 1977, in the same case.
Point of Americas Condominium Apartments, Inc., a condominium association, and three couples owning one condominium unit each, brought suit both individually and as a class representing all other unit owners similarly situated in Phase II of said condominium, against Rolland Welch and Dorothy P. Welch, his wife. They sought to quiet the title to Condominium Unit 2-II and its terrace and for ejectment to gain possession of said Unit. It was alleged that Unit 2-II was a common element and thus belonged to all unit owners according to their respective interests in the condominium common elements. The Welchs filed a third party complaint against Cedar Lane Developers, Inc., the developer of the condominium, based upon the warranties in their deed.
The main claim was tried and the court entered an order on September 27, 1976, setting forth findings of fact and conclusions favorable to the plaintiffs, but withholding judgment to await disposition of the third party action. In an abundance of caution the interlocutory appeal was filed. After a trial on the third party claim a final judgment was entered in favor of plaintiffs on the main claim against the Welchs and in favor of the Welchs on the third party claim against Cedar Lane Developers.
Factually, it appears that Cedar Lane developed a condominium in two phases. When Phase I was completed and the Declaration of Condominium was recorded, construction and sale of Phase II commenced. The original Declaration of Condominium for Phase I contained plot plans and surveys for the first phase of the condominium and authorized the developer to record an amendment to the declaration incorporating final as-built surveys of a second building, thereby integrating Phase II as part of Point of Americas Condominium. In connection with the sale of the Phase II, Cedar Lane distributed to prospective purchasers a booklet entitled "Condominium Documents" which contained, among other things, the proposed layout of each floor, by-laws, rules and regulations. The entrance level floor plan showed the layout of that floor and designated a specific apartment at the southwest corner as "Manager's Apartment."
On July 7, 1971 Cedar Lane recorded an Amendment to the Declaration of Condominium one aspect of which showed what had been represented as the "Manager's Apartment" on the ground floor as private Unit 2-II. It also specified as part of the common elements another ground floor unit designated "Superintendent's Apartment." Prior to the recording of this amendment a *62 number of unit owners (less than 100) including the individual plaintiffs closed in escrow because title could not be conveyed until the Declaration Amendment was recorded. The appellees contended they were not aware of the declaration amendment until months after they received their deeds which, of course, would violate Paragraph 7(a) of their purchase agreement, infra, if the amendment changed the Manager's Apartment from a common element to private ownership.
The Welchs purchased Unit 2-II and entered into possession around March 1, 1972. A week or so later an ad hoc committee of several unit owners notified the Welchs by telegram that they objected to the sale of the "Manager's Apartment" shown on the brochure which was attached. The Welchs, after discussing the matter with their counsel, eventually closed and received a warranty deed pursuant to the Amended Declaration of Condominium. Thereafter, Mrs. Welch (her husband having passed away) occupied Unit 2-II and paid all of the regular assessments right up to the trial date. The manager of the condominium and his family have continued occupancy of the "Superintendent's Apartment."
The trial court entered final judgment for the appellees, the Condominium Association and the unit owners and quieted the title to Unit 2-II as a common element; granted ejectment against Mrs. Welch; ordered the condominium unit known as the "Superintendent's Apartment" to become the property of Cedar Lane Developers; awarded Mrs. Welch a judgment for $74,300.00 against Cedar Lane Developers; and, pursuant to stipulation of the parties, made said judgment for Welch a lien upon the unit known as the "Superintendent's Apartment." Appellant, Welch, appealed from the interlocutory order of September 27, 1976, and Mrs. Welch and Cedar Lane both appeal from the final judgment.
The thrust of appellant's attack upon the final judgment is threefold:
1) That it was error to quiet the title to Unit 2-II in appellees and eject Welch from said unit when appellees had "at best, some equitable claim, but no muniment of title against a defendant [appellant] who held a recorded deed from the prior owner [the developer]."
2) It was error to quiet the title and grant ejectment because that relief is inconsistent with the express terms of the recorded Declaration of Condominium.
3) The court erred in failing to find that appellees were estopped to challenge the title to Unit 2-II because appellees accepted all the benefits conferred by the Declaration of Condominium and Amendment which created the unit.
Appellees contend, and the evidence supports them, that Unit 2-II and its terrace, as common elements, are of greater value to the condominium unit owners than is the unit designated "Superintendent's Apartment" and for that reason the unit owners have been injured. They point out that in selling these units the developer furnished them with a booklet which contained a floorplan designating Unit 2-II as the "Manager's Apartment" and that they had a right to rely upon that representation. In addition appellees point out that the contract which all unit owners signed provided:
A. The Developer has promulgated a Condominium Plan for the ownership of POINT OF AMERICAS Phase II (a proposed condominium apartment building hereinafter referred to as the "Building"), 2100 South Ocean Lane, Fort Lauderdale, Florida; and
B. The Developer has recorded certain condominium documents consisting of the Declaration and Exhibits A-E for development of Phase I Building, which said Declaration and Exhibits shall be utilized, except as to apartment surveys, for the Phase II Building herein described. (Emphasis supplied.)
On the other hand, Welch and Cedar Lane contend that the contract also contained a provision authorizing modification as follows:
21. Developer reserves the right to make such modifications, additions, or deletions *63 in or to the Declaration and Exhibits thereto as may be required or deemed necessary by the Developer, any lending institution designated by the Developer to make mortgage loans on apartments, or by public authorities provided, however, that if such modifications, addition or deletions shall:
(a) increase the proportion of the common Expenses to be borne by the Apartment being sold hereunder;
(b) increase the cost of the Apartment being sold hereunder;
(c) require a material physical modification of the Apartment being sold hereunder,
then and in that event, at the option of the Developer or the Purchaser, this Agreement may be cancelled and all deposits made by Purchaser shall be refunded to him in full and the parties thereafter shall be relieved of all obligations hereunder.
Thus, appellants say that the developer was entitled to change the floorplan of Phase II and the Amendment to the Declaration containing that modification was contemplated. The appellees counter that argument by pointing to ¶ 7 of the purchase agreement which provided:
7. The Apartment and Purchaser's interest in the Common Elements are to be conveyed subject to:
(a) The terms, conditions, covenants and provisions set forth in the Declaration and any amendments to the Declaration required by law or lending institution subsequent to execution hereof, provided copies of said amendments are furnished to Purchaser before closing. (Emphasis supplied.)
It is conceded that something less than 100 unit owners closed in escrow with no knowledge of the subsequent modification contained in the amendment in question.
Finally, appellees say that even though Welch's title is based upon a warranty deed in conformity with the Amended Declaration of Condominium she is not a bona fide purchaser without notice of the equities involved. She was notified by telegram of the unit owners' objection to her purchasing Unit 2-II and she postponed closing for a period of time while her lawyer and counsel for the developer considered the unit owners' objection.
On these facts the trial judge ruled in favor of appellees which obviously means he concluded the equities created by this factual setting were with the appellees. We think there is support in the record for such a conclusion and our only concern has to do with the remedies sought. We perceive the issue to be whether the appellees had a right to the remedies of quieting title and ejectment against Welch or whether the proper remedy was against the developer for damages for fraud and misrepresentation.
Appellants argue at some length that, regardless of the equities involved, appellees sought the wrong remedies; quiet title and ejectment are not available to appellees under these facts. Appellant in her brief characterizes appellees' position as a "claim of superior title ... not premised upon any deed or muniment of title in the apartment which they held, for they had none. Rather it was premised upon the assertion that all of the unit owners held title in the apartment because the developer had made false representations to less than one third of the total unit owners." Appellant then contends that a mere equitable interest not amounting to title is generally insufficient to support a suit to quiet title, citing Atlantic Beach Improvement Corp. v. Hall, 143 Fla. 778, 197 So. 464 (1940). It is apparent to us that Hall stands for the proposition that an equitable title will support a suit to quiet title, but that not every claim of an equitable interest in property will do so. The authority for the trial court to entertain a suit to quiet title and award possession of the questioned property is contained in Chapter 65, Florida Statutes (1975).
It could well be argued that appellees had no equitable title in the manager's apartment prior to the recordation of the Declaration of Condominium as the condominium *64 is created and the common elements come into being as of the date of recording the Declaration. § 718.104, Florida Statutes. Absent equitable title as opposed to a mere equitable claim or interest the appellees had no standing to maintain a suit to quiet title against the holder of the legal title. Atlantic Beach Improvement Corp. v. Hall, 143 Fla. 778, 197 So. 464 (1940).
Adverting once again to the factual situation presented, essentially, as appellant contends, appellees base their claim to title "upon the fact that Cedar Lane had issued a booklet and sales material reflecting that the subject apartment was to be a `manager's apartment' upon which they relied. In short, they were able below to convert an alleged unrecorded false misrepresentation made to a few potential unit owners into a legal title in all unit owners superior to that of one holding a recorded warranty deed to the subject property." If this factual situation gives rise to a right in, for example, eighty of the unit owners to quiet the title to the "Manager's Apartment" as a common element, what is there to prevent another fifty or one hundred unit owners from bringing a similar suit alleging they were told or shown drawings indicating yet another unit, presently owned by a private party, as the "Manager's Apartment." It would seem the allowance of such a remedy could lead to an absurdity.
Each of these unit owners who were the recipients of false representations and who closed prior to recordation of the Amendment to the Declaration of Condominium have a cause of action against the Developer for their damages suffered as a result thereof. But under the circumstances of condominium ownership where the developer may well make different false representations to different prospective purchasers, it appears to us that quieting title so as to reduce a privately held unit to a common element is an incongruous result.
The appellees represent less than one hundred unit owners out of approximately three hundred. It would be paradoxical if the other two hundred unit owners preferred to keep the Superintendent's Apartment as shown on the Amendment to the Declaration of Condominium. Of course, appellees would no doubt contend that the other two hundred owners in this case are in accord with appellees' position. Nevertheless, on principle, it seems to us a dangerous precedent to allow the maintenance of a suit to quiet title and ejectment under these circumstances.
To hold that every unit owner can sue to quiet title to various portions of the condominium property based upon unrecorded representations and have those areas declared common elements could lead to havoc as far as the stability and integrity of condominium titles are concerned.
Accordingly, the final judgment appealed from is reversed and the cause remanded with directions to enter judgment for appellant.
The interlocutory appeal from the order of September 27, 1976, is dismissed as a nonappealable order.
BERANEK and MOORE, JJ., concur.