560 So.2d 431 (1990)
Charles H.H. BEHM, et ux., et al., Appellants,
v.
Amadeo B. SAELI, et ux., et al., Appellees.
No. 89-508.
District Court of Appeal of Florida, Fifth District.
May 10, 1990.
Louis Ossinsky, Jr. of Ossinsky, Krol and Hess, Daytona Beach, for appellants.
A.M. Crabtree, Jr., P.A., Satsuma, for appellees.

ON MOTION FOR REHEARING AND/OR CLARIFICATION
GOSHORN, Judge.
We deny the appellees' motion for rehearing but grant the motion for clarification of the opinion filed February 8, 1990. The original opinion is hereby withdrawn and the following opinion is substituted in its stead:
Appellants, plaintiffs below, appeal the final judgment finding no easement existed over appellees' land and enjoining appellants from going upon appellees' property. We reverse.
In 1967 Robert Dinkins purchased 40 acres. He entered into a contract with Halloran to sell the northwest 10 acres. Under the direction of Halloran, Dinkins split the 10 acres into 4 parcels, deeding parcel 1 to Halloran's mother, parcel 2 to Bustruck, Halloran's aunt, parcel 3 to Lloyd, Halloran's friend, and parcel 4 to Halloran (see map). Dinkins testified that in conjunction with the sale, he built a north/south road across the north 20 acres providing access to his own south 20 acres. Indeed, the access road was a condition of the sale. The contract for the sale between Dinkins and Halloran provided, "Ten acres more or less  SUBJECT to a 30 foot wide Ingress and Egress Easement along the East line." Prior to the sale, Halloran ordered *432 a survey prepared showing the existence of the easement. The deeds from Dinkins to the Hallorans and Bustruck recited that the property was "subject to a right of way across the east 30 feet thereof."
Approximately six years after the conveyance to the Hallorans and Bustruck, Dinkins deeded the south 20 acres to Schuck without reference to the easement. Appellant Charles Behm acquired title to the south 20 acres in 1986 from Schuck. Behm testified that prior to the purchase he travelled over the easement road to inspect the 20 acres and also inspected the public records, determining access to the property existed over the easement road. However, the deed from Schuck to Behm contained no reference to the easement. In 1986 Charles Behm and his wife entered into a sales contract for deed to sell the north 10 acres of the Behms' land to their son, Cary Behm. The entire Behm family used the easement road until Edwards, a successor in title to part of the property burdened by the easement, locked a gate thereby blocking access to the road.
When Behm discovered the road blocked, he demanded access. Edwards refused. Behm then requested Dinkins to execute and deliver to Behm a quitclaim deed conveying Dinkins' interest to the easement. Dinkins did so. Behm next filed suit against Edwards, seeking a declaratory judgment. During pendency of the suit between Behm and Edwards, Edwards sold the property to Saeli, who was substituted as a party defendant. Saeli filed a petition for injunction seeking to prevent Behm from using the road.
Following the trial, the judge correctly held that the words "subject to a right-of-way across the East 30 feet" are insufficient in and of themselves to determine whether or not an easement was created. In order to make that determination a court must look to the surrounding agreements and circumstances and determine the intentions of the parties at the time the language was used. Robertia v. Pine Tree Water Control District, 516 So.2d 1012 (Fla. 4th DCA 1987); Procacci v. Zacco, 324 So.2d 180 (Fla. 4th DCA 1975).
Reviewing the record, we find that all the evidence points to an understanding and agreement between Dinkins and Halloran to create and reserve an easement. The contract and the deeds provided for the easement. The survey ordered by Halloran prior to the closing showed the easement. Dinkins built and paid for a road along the entire length of the easement. The realtor involved in the Dinkins-Halloran sale testified that Halloran wanted the easement for access to his property. However, she could not remember if Dinkins mentioned he wanted an easement. There was no testimony or evidence offered suggesting any intention other than to create the easement.
The easement thus established by the evidence is an easement appurtenant since it was created to benefit the owner of the dominant estate and did in fact help the owner in his physical use of the land. See Bruce and Ely, "The Law of Easements and Licenses in Land" § 2.01 (1988).
Unless prevented by the terms of its creation, an easement appurtenant is transferred with the dominant property even if this is not mentioned in the instrument of transfer. Therefore, a person who succeeds to the possession of the dominant estate is entitled to enjoy any easement appurtenant thereto.
Id. at section 8.01. See also 3 R. Powell, "The Law of Real Property" § 418 (1987). Therefore, the fact that Dinkins' deed to Schuck and Schuck's deed to Behm was silent with respect to the easement is immaterial.[1]
Saeli makes one final argument. The deed from Dinkins to Schuck to the south 20 contained the following description:
East 1/2 of the Northwest 1/4 of the Northwest 1/4 and the East 1/2 of the Southwest 1/4 of the Northwest 1/4 of Section *433 34, Township 11 South, Range 27 East, Putnam County, Florida. EXCEPT Official Records Book 347, page 748, Official Records Book 347, page 750, Official Records Book 347, page 751 and Official Records Book 350, page 1 [Emphasis added].
The exceptions refer, inter alia, to the deeds from Dinkins to the Hallorans and Dinkins to Bustruck. Saeli incorrectly urges that these exceptions in the deed excluded the transfer of the easement. In fact, the exceptions were used as a legal description of the property conveyed from Dinkins to Schuck, i.e., Dinkins conveyed to Schuck the entire 40 acres he owned except for the parcels he had already sold. There is no indication Dinkins intended to provide that the benefit of the easement appurtenant would not pass with the dominant estate. See Rest. of Property § 487, Comment b.[2] The language in the deeds from Dinkins to Schuck which excepted the legal descriptions of the prior conveyances made by Dinkins to the Hallorans and Bustruck, among others, was simply a shorthand method of legal description.
Having found that the trial court erred in finding no easement, we necessarily conclude the court erred by enjoining Behm from exercising his right of ingress and egress over the easement.
Appellant also argues that the trial court erred by retaining jurisdiction to award attorney's fees. Because no order awarding fees has been entered, this issue is prematurely raised and we do not address it.
Accordingly, this cause is reversed and remanded with instructions to enter a final judgment consistent with this opinion.
REVERSED and REMANDED with instructions.
DANIEL, C.J., and COBB, J., concur.
*434 
NOTES
[1] Even assuming the easement did not run with the land, which it did, Dinkins' act of quit claiming whatever interest he had in the easement to Behm would have cured the defect.
[2] Restatement of Property § 487, Comment b provides:

Terms of transfer of dominant tenement. There is nothing to prevent a transferor from effectively providing that the benefit of an easement appurtenant shall not pass to the transferree of the dominant tenement. Such a provision contravenes no rule of law. If its purpose is to extinguish the easement it will have this effect. If the purpose of the provision is to change the easement appurtenant into an easement in gross, it will have this effect if, and only if, the manner or the terms of the creation of the easement permits such a change to be made. If they do not permit this to be done, the result will be either that the provision against transfer is ineffective or that the easement is extinguished. Which of these results will occur depends upon whether the provision against transfer is construed to be conditioned upon the effective accomplishment of the purpose to change the easement into one in gross.