587 So.2d 584 (1991)
Walter MERRIAM and Jo Ann Merriam, Husband and Wife, Appellants,
v.
FIRST NATIONAL BANK OF AKRON, OHIO, as Trustee of the James L. Knight Trust, David Crow and Gretchen S. Crow, John David Crow, and Judith Crow Quinn, d/b/a Forest & Lakes Plantation, Appellees.
No. 90-3529.
District Court of Appeal of Florida, First District.
October 8, 1991.
*585 John L. Fishel, II, of Sale, Smoak, Harrison, Sale, McCloy & Thompson, Panama City, for appellants.
Benjamin W. Redding and Michael J. Hauversburk of Fite, Bassett & Fensom, P.A., Panama City, for appellees.
ZEHMER, Judge.
Walter and Jo Ann Merriam appeal a final order dismissing their complaint against Forest & Lakes[1] with prejudice on the ground that it failed to state a cause of action. The complaint sought to permanently enjoin Forest & Lakes from denying the Merriams hunting and fishing access to two tracts of land Forest & Lakes owns in a real estate development known as "Chain Lakes." The Merriams alleged that they own one parcel of property in Chain Lakes, parcel 9, and that the deed conveying them this property also assigned them the right and privilege to hunt and fish on all of the Chain Lakes property. They attached to the complaint each of the deeds in parcel 9's chain of title. The trial court reviewed the complaint and deeds and dismissed the complaint, ruling as a matter of law that although the original deed conveying parcel 9 created an assignable right and privilege to hunt and fish on all of the Chain Lakes property, the subsequent deeds were insufficient to assign such right and privilege. We hold that the trial court erred in finding as a matter of law that the deeds were insufficient to assign the hunting and fishing rights.
The complaint alleges that Chain Lakes is a contiguous tract of approximately 900 acres of land located in Washington County, all of which at one time was owned by R.H. and Maude Brazil. The Brazils sold several parcels of land from this 900-acre tract, and to each purchaser they conveyed hunting and fishing rights over the entire 900 acres. Parcel 9, the lot now owned by the Merriams, was initially conveyed from the Brazils to Harry Miles in 1950. The warranty deed from the Brazils conveyed the hunting and fishing rights to Miles by the following language:
The property hereby conveyed is a part of a tract of 900 acres of land in said county owned by the parties of the first part described as... . As a part of the consideration for this Deed, the parties of the first part hereby grant to the party of the second part, his heirs and assigns, the right and privilege, in common with others whom such right and privilege may be granted, to hunt and fish on all parts of said 900 acre tract not heretofore or hereafter conveyed as lots similar to the lot hereby conveyed.
The complaint further alleges that in 1953, Miles conveyed parcel 9 and its appurtenant hunting and fishing rights to Floyd Weldon by a warranty deed that included the following language:
This conveyance is made subject to the conditions contained in that certain warranty deed executed by R.H. Brazil and Maude R. Brazil on the 16th day of October, 1950 and which is recorded in the office of the clerk of the Court of Washington County, Florida.
In 1959, Weldon conveyed parcel 9 and its appurtenant hunting and fishing rights to Joseph and Doris Mathis by a warranty deed containing the exact same language as that in the Miles to Weldon deed quoted *586 above. In 1967, the Mathises conveyed parcel 9 and its appurtenant hunting and fishing rights to the Merriams. Again, the warranty deed contained the exact same language as is quoted above from the Miles to Weldon deed.
The complaint then alleges that in 1983, Forest & Lakes took title to two parcels of Chain Lakes property; one parcel consisted of 80 acres and the other consisted of 240 acres. In November 1988, Forest & Lakes denied the Merriams access to these two parcels by erecting permanent, barbed-wire fencing across access roads and by posting no trespassing signs on the property. From the time they purchased parcel 9 in 1967 until Forest & Lakes denied them access to its two parcels of land, the Merriams hunted and fished on the entire 900 acres of Chain Lakes property.
The complaint's allegations and the deeds attached thereto raise issues that must be resolved under the general law pertaining to profits a prendre. A profit a prendre is the right or privilege to acquire, by severance or removal from another's land, some thing or things previously constituting a part of the land or pertaining to the land. Tiffany, The Law of Real Property § 839, at 427 (3d ed. 1939). The right or privilege to hunt and fish on another's land is properly characterized as a profit a prendre. Alford v. Finch, 155 So.2d 790 (Fla. 1963); 25 Am.Jur.2d, Easements and Licenses § 4 (1966); Annot. 49 A.L.R.2d 1395 (1956); 3 Tiffany, The Law of Real Property § 839, at 427-428 (3d ed. 1939). A profit a prendre may be either appurtenant to land or in gross. If the profit is enjoyed by reason of holding land, it is regarded as appurtenant to that land (the dominant tenement) and, in the absence of language in a deed indicating a contrary intention, passes prima facie to the grantee. 3 Tiffany, The Law of Real Property § 843, at 433-434 (3d ed. 1939); 19 Fla. Jur.2d Deeds §§ 154, 155 (1980). If, however, the profit belongs to an individual distinct from any ownership of other land, it is regarded as a profit a prendre in gross and is neither assignable nor inheritable unless expressly mentioned in the document of conveyance. Tiffany, The Law of Real Property § 843, at 433-444 (3d ed. 1939); 19 Fla.Jur.2d, Deeds § 155 (1980). The question of whether a profit a prendre is in fact assignable is to be determined in accordance with the intention of the parties to the original warranty deed. Annot. 49 A.L.R.2d 1395 (1956).
In this case, the original warranty deed clearly conveyed a profit a prendre from the Brazils to Miles by language granting Miles the "right and privilege, in common with others whom such right and privilege may be granted, to hunt and fish on all parts of said 900 acre tract not heretofore or hereafter conveyed as lots similar to the lot hereby conveyed." The original deed contains no language expressly indicating whether the original parties intended the profit a prendre to be in gross or appurtenant, or whether it could be further conveyed or assigned. However, the trial court apparently determined that the profit a prendre was in gross because the order of dismissal recites that the hunting and fishing rights could have been assigned but that the "subsequent deeds ... were insufficient to assign said `right and privilege' by the use of the term `subject to.'"
We agree with the trial court that an assignable property right was created by the Brazil to Miles deed. However, we disapprove the court's ruling as a matter of law that the right so created was in gross. The law favors the presumption that an easement is appurtenant, rather than in gross, 25 Am.Jur.2d Easements and Licenses § 13 (1966),[2] and we see no reason *587 not to apply a similar presumption to profits a prendre.[3] This presumption is rebuttable, however, so the appellees must be accorded an opportunity to present a defense to the plaintiffs' allegations.
If on remand the trial court determines the profit is appurtenant, it runs with the land and there is no necessity that the deed contain an express assignment or conveyance of the hunting and fishing rights. If, however, after hearing the evidence the trial court should determine that the profit is in gross, the trial court must then consider whether the following language in each warranty deed in the chain of title was sufficient to convey or assign the profit to each grantee:
This conveyance is made subject to the conditions contained in that certain warranty deed executed by R.H. Brazil and Maude R. Brazil on the 16th day of October, 1950 and which is recorded in the office of the clerk of the Court of Washington County, Florida.
(emphasis added.) The trial court ruled as a matter of law that this language was insufficient to assign the hunting and fishing rights. We conclude, however, that use of the words "subject to" created an inherent ambiguity that must be resolved by reference to extrinsic evidence.
In Procacci v. Zacco, 324 So.2d 180 (Fla. 4th DCA 1976), the fourth district considered whether the clause, "Subject to an easement for road right-of-way over the South 25 feet of the North 235 feet of the above described land," was legally sufficient to reserve an easement for adjoining property. That court found that the use of the words "subject to" in an attempt to create an easement led to unclear and ambiguous results, requiring recourse to surrounding facts and circumstances to determine the intention of the parties. 324 So.2d at 182. We conclude that the "subject to" clause used in this case is equally ambiguous. One of the meanings of the term "subject to" cited in Procacci is "charged with." If parcel 9 was conveyed "charged with" the conditions in the Brazil deed, a patent ambiguity exists with regard to whether the parties intended that this clause explicitly convey or assign the hunting and fishing rights.
In view of the ambiguities described, the plaintiffs are entitled to present evidence of "surrounding agreements and circumstances" to assist in the determination of the parties' intent. Behm v. Saeli, 560 So.2d 431, 432 (Fla. 5th DCA 1990). See also 19 Fla.Jur.2d Deeds § 106 (1980) (Where the language of a deed is ambiguous, courts will admit evidence of surrounding facts and circumstances to explain and determine the meaning and intent of the terms employed by the parties.). The court may also consider evidence showing how the parties to each transaction subsequent to the conveyance by the Brazils to Miles construed or treated the rights to hunt on the entire Chain Lakes property. See Smart v. Brownlee, 195 So.2d 4 (Fla. 4th DCA 1967) (When the intention of contracting parties is not clearly expressed in the contract, such intention may be demonstrated by conduct.). See also 19 Fla. Jur.2d Deeds § 108 (1980) ("[W]here the construction of a deed is doubtful, great if not controlling weight is to be given to the construction put upon it by the parties, and to determine their construction the court may properly consider their subsequent acts and admissions.").
*588 Therefore, we reverse the order of dismissal and remand for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
SHIVERS and KAHN, JJ., concur.
NOTES
[1] Appellees, First National Bank of Akron, Ohio, as Trustee of the James L. Knight Trust, David Crow and Gretchen S. Crow, John Crow, and Judith Crow Quinn, d/b/a Forest & Lakes Plantation, are collectively referred to in this opinion as "Forest & Lakes."
[2] 25 Am.Jur.2d Easements and Licenses § 13 (1966) states in part:

Whether an easement in a given case is appurtenant or in gross depends mainly on the nature of the right and the intention of the parties creating it. If the easement is in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the parties as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant and not an easement in gross. Easements in gross are not favored by the courts, however, and an easement will never be presumed as personal when it may fairly be construed as appurtenant to some other estate. If doubt exists as to its real nature, an easement is presumed to be appurtenant, and not in gross.
[3] A profit a prendre is similar to an easement in that both are interests in land that may be either appurtenant to other land or in gross, both are incorporeal hereditaments to which corporeal property is subject, and neither can be created by parol but must be created by grant. An easement is distinguishable from a profit a prendre in that an easement is the absence of all right to participate in the profits of the soil charged with the easement. 25 Am.Jur.2d, Easements and Licenses § 4 (1966). An easement appurtenant is transferred with the dominant property even if it is not mentioned in the instrument of transfer unless prevented by the terms of its creation. Behm v. Saeli, 560 So.2d 431 (Fla. 5th DCA 1990).