719 So.2d 22 (1998)
ESTATE OF Mary Grace JOHNSTON, deceased, Appellant,
v.
TPE HOTELS, INC., a Florida Corporation, Appellee.
No. 97-564.
District Court of Appeal of Florida, Fifth District.
September 11, 1998.
Rehearing Denied October 14, 1998.
*23 R. Stephen Miles, Jr. of Miles and Cumbie, P.A., St. Cloud, for Appellant.
Patrick C. Crowell of Patrick C. Crowell, P.A., Orlando, for Appellee.
W. SHARP, Judge.
Mary Grace Johnston appeals from an adverse final judgment in a quiet title suit, in which she sought to defend and establish her rights, as the owner of the claimed dominant tenement to a perpetual easement over the *24 claimed servient tenement, now owned by TPE Hotels. The trial court ruled that the easement had been terminated by virtue of various doctrines: platting without showing the easement on the plat, estoppel by deed, novation, and abandonment. We affirm.
The parties do not dispute the facts in this case. The issues here are purely ones of law and much to our surprise (given the often litigated and much written upon subject of real estate title transactions) constitute ones of first impression in this state. In essence, this case presents the question of whether the trial court correctly ruled that an express reservation of a perpetual easement created in a deed of record is extinguished when the owner of the dominant tenement joins with the owner of the servient tenement to dedicate and record a plat encompassing both of their properties, which does not disclose or show the perpetual easement, and successor title holders of the servient tenement not privy to the original parties' thoughts and intents, purchase the property in reliance on the plat.
The property encompassing the disputed dominant and servient tenements was formerly owned by John Johnston, Mary Grace's husband, in the 1960s. It was composed of three tracts of land2, 3, and 4 described by reference to metes, bounds and surveys. In February 1996, John and Mary Grace conveyed tract 3 to Osceola Inns Corporation by a warranty deed, which was duly recorded. In the deed, John expressly reserved, as to tract 3 (as well as tract 2) the right to use tracts 3 and 2, for purposes of ingress and egress to and from his adjacent lands (tracts 2 and 4).
Tract 3 is located north of tract 4, and east of tract 2 (see appendix). It is shaped like a rectangle, but it has a long narrow sleeve-shaped extension to the south that runs between tracts 2 and 4 and provides tracts 2 and 4, as well as tract 3, with access to U.S. Highway 441-192. This access easement was in continuous use by the dominant tenements (tracts 2 and 4) from its creation, up until the time of this litigation.
In 1966, John Johnston was the president and principal shareholder of Osceola Inns. In September, he and Osceola Inns executed and recorded a plat of their lands, which included tracts 2, 3 and 4 and other property owned by him. It was designated the "Shady Deal" Subdivision. The plat did not change the configuration of tracts 2, 3 and 4, nor their names, except to call them lots rather than tracts. However, there is no reference to the perpetual easement for ingress and egress over the sleeve portion of lot 3 in the plat, and it is not shown on the map.
First Federal Savings and Loan Association held mortgages on the property when it was platted. According to the testimony of John Johnston, First Federal required that he and Osceola Inns grant one another express reciprocal twenty-year easements. In 1972, Osceola Inns granted Johnston a 20-year easement over the sleeve portion of lot 3 and Johnston granted Osceola Inns a 20-year easement over lot 4. The easements were recorded.
First Federal's requirement or request for reciprocal easements was apparently made in connection with a transaction between Osceola Inns and Vacation Motels of Florida, Inc., pursuant to which Vacation acquired all of the stock of Osceola Inns. Johnston testified First Federal required a 20-year easement because that was the term of its mortgage and because there was something in the original easement that did not suit it. He said First Federal expressed the concern that the perpetual easement did not give it the "control" it needed.
Johnston further testified at that time he was not an officer, director nor shareholder of Osceola Inns. He did not know why that corporation executed the reciprocal easement. He said he did not intend to release, limit or extinguish the perpetual easement. He also noted that the reason the easement was not shown on the plat was because he intended it to be a private easement only and not one dedicated to the public.
By 1970, John Johnston and his first wife, Mary Grace, had divorced and he and his second wife had moved to Australia. In 1973, John conveyed lots 2 and 4 to Loranda Properties, Inc., a corporation established by him for the benefit of his children. In 1977, *25 Loranda conveyed lots 2 and 4 to Mary Grace. None of these deeds mentioned the private perpetual easement over lot 3, although they need not have done so because had the easement survived, it would have passed as appurtenant to the dominant tenements (lots 2 and 4).[1]
Lot 3 was conveyed to successor owners, not in privity with the Johnstons or Osceola Inns, the last being TPE Hotels, the plaintiff in this law suit. None of the deeds in the chain of title mentioned the private perpetual easement. TPE Hotels took title from BWZ, Inc. in 1992. The deed conveyed lot 3 of the Shady Deal Subdivision, according to the plat thereof (with references to Plat Book and Page) "Subject to: liens, encumbrances, covenants, restrictions and easements of record...." At the trial in this case, TPE's executive officer testified that prior to his corporation's purchase of lot 3, he had checked the Shady Deal Plat and relied on it. He also testified he relied on the prior owner's representation that the 20-year easement over lot 3 had expired.
Between 1984 and 1988, the Johnstons sent letters to the owners of lot 3, attempting to acquire a permanent easement over the sleeve portion of lot 3, or seeking to extend the 20-year easement, which had been created in 1972. Mary Grace currently owns lots 2 and 4. Her son, David Johnston, owns Crystalbrook Golf Club of Osceola Inc., and Greenscape Mowing, businesses which are currently tenants of lots 2 and 4. The Johnstons (David and Mary Grace) use lots 2 and 4 to operate a golf course and landscape business and these businesses also continuously used the sleeve portion of lot 3 for access to Highway 192, until this controversy arose.
In 1994, TPE Hotels sued Crystalbrook Golf Club and Greenscape Mowing for trespass and damages. It alleged these businesses were using the then expired 20-year easement over lot 3, as well as other property, without its permission and consent. The defendants filed affirmative defenses and counterclaims for trespass over lots 2 and 4. Mary Grace intervened in the proceedings, and counterclaimed to establish her right as the successor owner of the dominant tenement (lots 2 and 4) to use the perpetual easement across lot 3, which had been created by the reservation in the 1966 recorded deed to Osceola Inns.
After a non-jury trial, the court ruled that the perpetual easement had been extinguished by the act of platting the lands, without reserving or showing the easement on the plat, that Mary Grace was estopped by deed to assert the perpetual easement because of the exchange of 20-year easements, that the reciprocal easements constituted a novation of the perpetual easement, and that both the platting and the reciprocal easement constituted an abandonment of the perpetual easement. It further ruled that Mary Grace's counterclaim to quiet title to the perpetual easement was barred by the statute of limitations. It awarded TPE $100.00 damages for trespass and Crystalbrook $100.00 damages against TPE. While we do not agree with all of the theories advanced by the trial judge, we agree with the result of the case and affirm.[2]
The theory of novation requires that the party asserting it carry the burden of proving the original parties' intent (Osceola Inns and John Johnston)[3] to the original transaction, to release the first right or contract in exchange for a later binding right or contract. Jakobi v. Kings Creek Village Townhouse Ass'n, Inc., 665 So.2d 325 (Fla. 3d DCA 1995); Brown v. Kelly, 545 So.2d 518 (Fla. 5th DCA 1989); Electro-Protective Corp. v. Creative Jewelry by Kempf, Inc., 513 So.2d 190 (Fla. 5th DCA 1987). That element of proof was not established in this case.
There is no testimony in this record to show that John Johnston and Osceola Inns, at the time they executed and recorded the *26 20-year reciprocal easements, intended to release and extinguish the perpetual easement over tract 3, which ran solely in Johnston's favor, in exchange for the 20-year reciprocal easement over tract 3 and 4. In fact, as appellants point out, Johnston gave up a far more valuable right than he received and he burdened tract 4.
The only testimony on this point was that the reciprocal easements were required by the mortgagee, who was apparently financing the transaction between Osceola Inns and Vacation Motels, no doubt for title and security reasons not understood by nor concurred in by Johnston. Although the existence vel non of an agreement between the parties to discharge an existing obligation by substituting another is normally a question of fact for the jury,[4] where there is no such evidence the fact of the granting and recording of the reciprocal easements alone is insufficient to establish that a novation occurred. See Prucha v. Guarantee Reserve Life Ins. Co. of Hammond, 358 So.2d 1155 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 459 (Fla. 1979).
Similarly, the theory of abandonment requires proof of the intent of the owner of the dominant tenement (Johnston) to extinguish or abolish an easement previously acquired.[5] This element must be established by clear and convincing evidence.[6] It can be established by proof of conduct by the servient owner to prevent the dominant owner from using the easement over the required length of time,[7] or by conduct upon the part of the owner of the dominant tenement which manifests an intent to no longer use the easement.[8] In this case, the easement was used continuously so no basis appears in this record to conclude the owner of the dominant tenement intended to abandon the easement over lot 3. See Wiggins v. Lykes Bros., Inc., 97 So.2d 273 (Fla.1957).
Nor do we think Mary Grace was barred in this case because of the operation of the statute of limitations. The trial court did not indicate which statute of limitations was involved. However, an easement is an incorporeal right of one party to use the land of another for some purpose or purposes. Kempfer v. St. Johns River Water Management District, 475 So.2d 920 (Fla. 5th DCA 1985), rev. denied, 488 So.2d 68 (Fla.1986). It does not involve title to or an estate in the land itself. See Easton v. Appler, 548 So.2d 691 (Fla. 3d DCA 1989); Dean v. MOD Properties, Ltd., 528 So.2d 432 (Fla. 5th DCA), rev. denied, 534 So.2d 400 (Fla.1988). Thus sections 95.12 and 95.14 are inapplicable because they govern actions to recover real property. See Kempfer (section 95.12 does not apply to action for rescission of grant of easement).
Section 95.031(1) provides that a cause of action accrues when the last element giving rise to it occurs. In this case there was no need for Mary Grace to claim her right to use the easement until she was barred from its use by a party claiming adversely to her. See In re C.L. Whiteside & Associates Construction Co., Inc., 118 B.R. 886 (Bankr.S.D.Fla.1990) (action to quiet title to crane was governed by four year statute of limitations for actions to recover personal property and for actions not otherwise specifically provided for in statute); Florida Power Corp. v. McNeely, 125 So.2d 311 (Fla. 2d DCA), cert. denied, 138 So.2d 341 (Fla.1961). In this case the Johnstons were not denied use of the access easement until shortly before this lawsuit was filed in 1994. Thus her claim was timely under any possibly applicable statute of limitations.[9]
*27 Mary Grace argues that because the perpetual easement was created by an express reservation in a recorded deed in the chain of title of TPE Hotels, Inc., owner of the alleged servient tenement, it was on notice of the easement and took subject to it. Dade County v. Little, 115 So.2d 19 (Fla. 3d DCA 1959). In Dade County, a subsequent purchaser of land was held to have taken his deed subject to an express reservation of an easement in a recorded deed by a prior grantor. Similarly, in Wiggins v. Lykes Bros., Inc., an original grantor reserved a grazing easement in a recorded deed, which was upheld to bind a successor grantee who had taken title to the servient tenement by a deed that did not mention the reservation. Although the successor of the original grantor had leased the land for grazing from the successor owner of the servient tenement (similar to the reciprocal easement scenario in this case) this did not estop the successor owner of the dominant tenement from claiming its rights to a continuing grazing easement. Persons in the chain of title are on notice as to easements and limitations created by recorded deeds in their chain of title and they are estopped to claim otherwise, absent additional circumstances. Furlong v. Fuller and Johnson, P.A., 492 So.2d 421 (Fla. 1st DCA 1986).
In this case, we think the facts and circumstances were such that Mary Grace, as the successor owner of the dominant tenement, and her tenants on the property are estopped to claim any continuing right to the perpetual easement created by the reservation contained in the recorded deed from John Johnston to Osceola Inns in 1966. Florida cases establish the concept that a landowner who records a plat showing streets and lots, evidences an intent to dedicate the streets to public use, and his grantee who purchases lots with reference to the plat, acquires the right to a private easement in the streets, parks or other common areas shown on the plat. See, e.g., Wilson v. Dunlap, 101 So.2d 801(Fla.1958); Price v. Stratton, 45 Fla. 535, 33 So. 644 (1903); Easton v. Appler, 548 So.2d 691 (Fla. 3d DCA 1989); City of Miami v. Eastern Realty Co., 202 So.2d 760 (Fla. 3d DCA 1967), cert. denied, 210 So.2d 866 (Fla.1968). In explaining this concept, the Florida Supreme Court said in McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1953) that it rests primarily on the concept of estoppel.
[t]he effectby whatever name it may be calledwas to forever bar the developer from denying the owners that which he led them to believe they had.... As maker of the plat and the one who selects the words used thereon it will be construed against him. Common honesty requires that he perform that which at the time of conveyance he represented he would perform.
63 So.2d at 909, 910.
However, in this case, the plat of record did not disclose the access easement over lot 3, in any form or manner. And, the owner of the servient tenement and the owner of the dominant tenement both joined in the execution, dedication and acknowledgement of the plat, "in the same manner in which deeds are required to be executed," pursuant to the statutes in effect at the time.[10] Although no "merger" occurred since there was no unity of title between Johnston and Osceola Inns,[11] their actions in platting both tenements and omitting mention of the prior recorded easement should be construed against them.[12]
In cases where a plat of record fails to disclose an easement or right argued for by persons who have purchased lots in the subdivision, courts have denied those persons easement rights. Jonita, Inc. v. Lewis, 368 So.2d 114 (Fla. 1st DCA 1979). C.f. Welch v. Point of Americas Condominium Apartments, Inc., 373 So.2d 60 (Fla. 4th DCA 1979). As the court said in Burnham v. Davis Islands, 87 So.2d 97 (Fla.1956), if the provisions on the face of the recorded plat are such as to negative any particular easement, an easement cannot be implied from *28 parol representations. Estoppel may be used to defeat title but not to establish it. Burnham.
Likewise the platter of a subdivision is bound by what is not shown on the plat. In Coffman v. James, a parcel was shown on the map but the owner failed to mark it as having been excepted from the dedication. The court held that the parcel was encumbered by the building restrictions imposed on the balance of the subdivision by the plat and dedication, even though the original owner and surveyor did not intend to include that parcel in the subdivision. The court ruled that there was no necessity to find a waiver or estoppel. The purchasers were entitled to rely on the public records. However, this is a form of estoppelestoppel by deed, which operates in the context of binding grantors of real property.[13]
Had the perpetual easement in this case belonged to (or been appurtenant to) property not included in the plat of the Shady Deal Subdivision, and had that dominant tenement owner not joined in the dedication of the plat, the result in this case would have been otherwise. The subsequent purchaser of the servient tenement would have been charged with notice of the easement by virtue of the deed recorded prior to the plat.[14] The fact that the plat failed to disclose the easement would not have mattered.
However, since both of the owners of the servient and dominant tenements joined in the dedication of the plat and the plat failed to disclose the easement, they should be held, as against subsequent purchasers pursuant to the plat without notice, to the representation of the subdivision, as shown on the recorded map. A plat is a representation of the subdivision, as exact and complete as possible. It is intended to disclose details, exact location of boundaries, and it must be prepared by a civil engineer or competent surveyor.[15] Lots and streets must be shown, and any parcels excepted must be so noted.[16] The purpose of the statutes and the public policy of this state is to protect subsequent purchasers of property in the subdivision[17] so that by studying the plat or map they can determine what rights and burdens are imposed on the property by the dedicators.
Nor do we think that TPE Hotels should be charged with notice of the private perpetual easement because such an easement was being used at the time it took title to lot 3. The explanation for the prior usage was the 20-year recorded easement, which had then recently expired. And, there was no evidence TPE Hotels had notice of Mary Grace's perpetual easement claim. Based on this record, it was clearly a bona fide purchaser. It is entitled to enjoy its lot purchased with reference to the plat, as that lot appears on the platnot burdened with an easement.[18]
AFFIRMED.
DAUKSCH and THOMPSON, JJ., concur.
*29 
NOTES
[1] Merriam v. First Nat. Bank of Akron, Ohio, 587 So.2d 584 (Fla. 1st DCA 1991); Behm v. Saeli, 560 So.2d 431 (Fla. 5th DCA 1990).
[2] Cohen v. Mohawk, Inc., 137 So.2d 222 (Fla. 1962); Ray v. Dock and Marine Construction, Inc., 183 So.2d 237 (Fla. 3d DCA), cert. denied, 192 So.2d 489 (Fla. 1966).
[3] Murphy v. Green, 102 Fla. 102, 135 So. 531 (1931).
[4] See Murphy v. Green.
[5] Bruce and Ely, Law of Easements and Licenses, Ch. 10 § 10-27; Jewett v. Leisinger, 655 So.2d 1210 (Fla. 4th DCA 1995).
[6] Id.
[7] Enos v. Casey Mountain, 532 So.2d 703 (Fla. 5th DCA 1988), rev. denied, 542 So.2d 988 (Fla. 1989).
[8] See Jewett v. Leisinger, 655 So.2d 1210 (Fla. 4th DCA 1995).
[9] § 95.11(2)(b), Fla. Stat. (5 years for a legal or equitable action on a contract, obligation or liability founded on a written instrument); § 95.11(3)(p) (4 years for suits not specifically provided for in the statutes).
[10] § 177.06, Fla. Stat. (1965).
[11] See Lacy v. Seegers, 445 So.2d 400 (Fla. 5th DCA 1984); Bruce and Ely, Law of Easements and Licenses, Ch. 10 § 10-53.
[12] See Coffman v. James, 177 So.2d 25 (Fla. 1st DCA 1965).
[13] 22 Fla. Jur.2d Estoppel and Waiver § 10.
[14] Bruce and Ely, Law of Easements and Licenses § 10.58; Wiggins; Furlong.
[15] §§ 177.05; 177.02, Fla. Stat. (1965).
[16] § 177.08, Fla. Stat. (1965).
[17] 35 Fla. Jur.2d Maps Plats and Surveys § 10.
[18] See Hagan v. Ellis, 39 Fla. 463, 22 So. 727 (1897); Andreu v. Watkins, 26 Fla. 390, 7 So. 876 (1890).